**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CRISTIAN ROSADO, Individually and For All Others Similarly Situated<br><br>v.<br><br>NEW YORK DIALYSIS SERVICES, INC. | Case No. _____<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action<br>FLSA Collective Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Cristian Rosado (Rosado) brings this class and collective action to recover unpaid overtime wages, untimely paid wages, and other damages from New York Dialysis Services, Inc. (NYDS).

2.      NYDS is a medical care services company that employs "manual workers," as contemplated by New York Labor Law (NYLL) § 191, in New York.

3.      NYDS employs numerous "manual workers" under job titles such as Patient Care Technician, Dialysis Technician, and similar job titles.

4.      NYDS employs Rosado as a Patient Care Technician.

5.      Despite being manual workers, NYDS fails to pay Rosado and the other Manual Workers (defined below) their wages within seven calendar days after the end of the week in which they earned such wages, as required by NYLL § 191.

6.      Instead, NYDS pays Rosado and its other Manual Workers on a bi-weekly basis.

7.      NYDS thus fails to timely pay earned wages to Rosado and the other Manual Workers.

8.      Rosado and the other Manual Workers are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955).

9.     Accordingly, NYDS's failure to timely pay wages owed to Rosado and the other Manual Workers constitutes an "especially acute injury" under NYLL § 191. *See Caul v. Petco Animal Supplies, Inc.,* No. 20-CV-3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC,* 175 A.D.3d 1144, 1146 [N.Y. 1st Dept. 2019]).

10.     Additionally, NYDS does not pay Rosado and the other Manual Workers for all the hours they work.

11.     Instead, NYDS automatically deducts 30 minutes a day from Rosado's and Manual Workers' hours for so-called "meal breaks" (NYDS's "auto-deduction policy").

12.     They are thus not paid for this time.

13.     But NYDS fails to provide them with *bona fide* meal breaks.

14.     And they do not actually receive *bona fide* meal breaks.

15.     Instead, NYDS requires Rosado and the other Manual Workers to remain on-duty and perform compensable work during their unpaid "meal breaks."

16.     NYDS's auto-deduction policy violates the Fair Labor Standards Act (FLSA) and NYLL by depriving Rosado and the other Manual Workers of overtime compensation for hours worked in excess of 40 in a workweek.

### Jurisdiction & Venue

17.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

18.     This Court also has supplemental jurisdiction over the state-law class claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

19.     And this Court has original subject matter jurisdiction over this matter pursuant to the jurisdictional provisions of the Class Action Fairness Act. 28 U.S.C. § 1332(d) ("CAFA").

20.     Specifically, upon information and belief:

a. the matter in controversy is believed to exceed $5,000,000;

b. at least one member of Rosado's proposed class and NYDS are citizens of different states; and

c. Rosado's proposed classes exceed 100 members.

21.     This Court has general personal jurisdiction over NYDS because NYDS is a domestic corporation.

22.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District. 28 U.S.C. § 1391(b)(2).

23.     Specifically, Rosado was employed by NYDS subject to its auto-deduction policy and was paid on a bi-weekly basis by NYDS in Bronx County and Westchester County, which are in this District.

**PARTIES**

24.     NYDS employs Rosado as a Patient Care Technician.

25.     Throughout his employment, NYDS has classified Rosado as non-exempt and paid him by the hour.

26.     NYDS pays Rosado on a bi-weekly basis.

27.     Throughout his employment, NYDS has subjected Rosado to its auto-deduction policy.

28.     But throughout his employment, NYDS has failed to provide Rosado *bona fide* uninterrupted meal breaks.

29.     And Rosado has not actually received *bona fide* uninterrupted meal breaks.

30.     Rosado brings this class and collective action on behalf of himself and other similarly situated Manual Workers whom NYDS subjected to its auto-deduction policy and/or failed to timely pay their earned wages.

31.     The putative FLSA collective of similarly situated employees is defined as:

> **All employees who worked for NYDS as hourly Patient Care Technicians, Dialysis Technicians, and similar job titles who were subject to NYDS's auto deduction policy. (the "FLSA Collective Members").**

32.     The putative class of similarly situated employees is defined as:

> **All employees who worked for NYDS in New York as hourly Patient Care Technicians, Dialysis Technicians, and similar job titles who were paid on a bi-weekly basis during the past 6 years and 228 days[1] (the "New York Class Members").**

33.     The FLSA Collective Members and New York Class Members are collectively referred to as the "Manual Workers."

34.     The Manual Workers can be readily ascertained from NYDS's business and personnel records.

35.     NYDS is a New York corporation headquartered in Waltham, Massachusetts.

36.     NYDS is registered to do business in the State of New York.

37.     NYDS may be served through its registered agent: **C T Corporation System, 28 Liberty Street, New York, New York 10005.**

### COVERAGE UNDER THE FLSA

38.     At all relevant times, NYDS has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

39.     At all relevant times, NYDS has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r)(2)(A).

---

[1] This class period is due to Governor Cuomo's Executive Orders that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for a total of 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law); *McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings Cnty. 2021) (calculating that, together, Governor Cuomo's Executive Orders lasted 228 days).

40.     At all relevant times, NYDS has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because NYDS is engaged in the operation of dialysis clinics and related services. 29 U.S.C. § 203(s)(1)(B).

41.     At all relevant times, NYDS has had an annual gross volume of sales made or business done of at least $1,000,000.

42.     At all relevant times, NYDS has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as cellphones, computers, medical tools and equipment, personal protective equipment, etc. – that have been moved in or produced for commerce.

43.     At all relevant times, Rosado and the other FLSA Collective Members have been NYDS's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e)(1).

44.     At all relevant times, Rosado and the other FLSA Collective Members were engaged in commerce or in the production of goods for commerce.

45.     NYDS deducts 30 minutes a shift from Rosado's and the other FLSA Collective Members' wages for "meal breaks," even when they do not actually receive *bona fide* uninterrupted meal breaks.

46.     As a result, NYDS fails to pay Rosado and the FLSA Collective Members for hours worked.

47.     NYDS's auto-deduction policy deprives Rosado and the other FLSA Collective of overtime compensation during workweeks they work over 40 hours. 29 U.S.C. § 207(a) & (e).

48.     As a result, NYDS fails to pay Rosado and the FLSA Collective Members overtime wages at rates not less than 1.5 times their regular rates of pay, in willful violation of the FLSA.

## FACTS

49.     NYDS provides healthcare services for patients, specifically related to dialysis treatment.

50.     To meet its business objectives, NYDS employs workers like Rosado and the other Manual Workers.

51.     While exact job duties and precise locations worked may differ, Rosado and the other Manual Workers are all subjected to NYDS's same or similar policies, while performing similar work.

52.     For example, Rosado has worked for NYDS as a Patient Care Technician from approximately August 2022 to the present in Bronx County and Westchester County, New York.

53.     Throughout his employment, NYDS has classified Rosado as non-exempt and paid him by the hour.

54.     NYDS pays Rosado approximately $26 an hour.

55.     Rosado works approximately 10 to 12 hours a day for 5 days a week (50 to 60 hours a workweek).

56.     Throughout his employment, over 25% of Rosado's duties have been physical tasks, including but not limited to: walking, unloading and transporting shipments of medical supplies, stocking medical supplies in NYDS clinics, sanitizing clinics, assisting non-ambulatory patients move as necessary, hooking and unhooking patients from dialysis treatment, monitoring patients' vital signs, patient training, physically demonstrating to patients how to use, clean, and maintain home dialysis machines, assisting patients in transporting home dialysis machines, and standing or otherwise being "on his feet" for extended periods of time.

57.     Despite regularly spending more than 25% of his shifts performing physical tasks, NYDS fails to timely pay Rosado his earned wages.

58.     Instead, NYDS pays Rosado on a bi-weekly basis.

59.     As a result of NYDS's untimely wage payments, NYDS has underpaid Rosado for the first seven days of each bi-weekly pay period throughout his employment.

60.     For example, NYDS paid Rosado on January 27, 2023 for manual work he performed during the January 8 to January 21, 2023 bi-weekly pay period:

| | |
|---|---|
| 22H Dept: A804          000000-000000<br>DBX    003123353<br>NY155-Freedom  Ctr of Bronx<br><br>*NY Dialysis  Services  Inc*<br>*781/699-9000*<br>*920 Winter Street*<br>*Waltham,  MA  02451* | **Earnings    Statement**<br>                    Page  001 of 001<br>Pay  Rate:          $26.00<br>Basis  of  Pay:     Hourly<br>Pay  Period:        01/08/2023 -  01/21/2023<br>Advice  Date:       01/27/2023<br>Advice  Number:     0018993149<br>Batch  Number:      000000004706 |

61.     Thus, NYDS has failed to timely pay Rosado his wages earned not later than seven days after he earned such wages, as required by NYLL § 191(1)(a), for every other week beginning August 2022, through the present.

62.     As a result of NYDS's untimely wage payments, NYDS has underpaid Rosado every other week across this entire period.

63.     NYDS's underpayments deny Rosado the time-value of his earned wages. *See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC*, --- F. Supp. 3d. ---, 2023 WL 4457911, at *7 (W.D.N.Y. July 11, 2023) (holding an employee's "lost time value of his wages" from being paid late was an injury in fact).

64.     For example, Rosado is unable to invest, save, or purchase utilizing the wages he earned during the first seven days of each bi-weekly pay period throughout his employment.

65.     NYDS subjects the other Manual Workers to the same policies it imposes on Rosado.

66.     Indeed, the other Manual Workers perform the same or similar physical job duties as Rosado.

67.     Over 25% of the other Manual Workers' daily job duties are the same or similar physical tasks that Rosado performs.

68.     But like Rosado, despite regularly spending more than 25% of their shift performing these physical tasks, NYDS fails to timely pay its other Manual Workers their earned wages.

69.     Instead, like Rosado, NYDS pays the other Manual Workers on a bi-weekly basis.

70.     As a result of its untimely wage payments, NYDS underpays the other Manual Workers for the first seven days of each bi-weekly pay period.

71.     Thus, like Rosado, NYDS pays its Manual Workers on an untimely basis in willful violation of the NYLL.

72.     And NYDS's underpayments similarly deny the other Manual Workers the time-value of their money, as they are unable to invest, save, or purchase utilizing the wages they earned and are owed during each underpaid workweek.

73.     And like Rosado, the other Manual Workers work approximately 50 to 60 hours a workweek.

74.     And NYDS subjects Rosado and the other Manual Workers to its auto-deduction policy, deducting 30 minutes each shift for so called "meal breaks."

75.     NYDS deducts this 30 minutes regardless of whether these workers actually receive a *bona fide* uninterrupted meal break.

76.     But NYDS does not actually provide Rosado and the other Manual Workers with *bona fide* uninterrupted meal breaks.

77.     And Rosado and the other Manual Workers do not actually receive *bona fide* uninterrupted meal breaks.

78.     Instead, NYDS requires Rosado and the other Manual Workers to remain on duty and perform compensable work during their unpaid "meal breaks."

79.     Indeed, because of these work interruptions, Rosado and the other Manual Workers are not free to engage in personal activities during their unpaid "meal breaks."

80.    Rather, during their unpaid "meal breaks," they are forced to substantially perform their regular patient care duties and responsibilities.

81.    Thus, Rosado and the other Manual Workers routinely spend their unpaid "meal breaks" performing work for NYDS's – not their own – predominant benefit.

82.    This unpaid time is compensable under the FLSA and NYLL because NYDS knew, or should have known, that (1) Rosado and the other Manual Workers perform unpaid work during their "meal breaks," (2) they are interrupted or subject to interruptions with work duties during any attempted meal break, (3) they are not completely relieved of all duties during "meal breaks," (4) they entirely skip "meal breaks" due to work demands, (5) the "meal breaks" are less than 30 consecutive minutes, (6) they are not free to engage in personal activities during their meal breaks because of interruptions, (7) they remain on NYDS's premises, and/or (8) they predominantly spend unpaid "meal breaks" performing their regular patient care work duties for NYDS's predominant benefit.

83.    NYDS fails to exercise its duty to ensure Rosado and the other Manual Workers are not performing work that NYDS does not want performed during their unpaid "meal breaks."

84.    Despite accepting the benefits, NYDS does not pay Rosado for the compensable work they perform during their "meal breaks."

85.    Thus, under NYDS's auto-deduction policy, Rosado and the other Manual Workers are denied overtime compensation for on-duty "meal breaks" in workweeks they work over 40 hours.

86.    NYDS knows Rosado and the other Manual Workers routinely perform work "off the clock" during their unpaid "meal breaks" because NYDS expects and requires them to do so.

87.    But NYDS does not pay Rosado and the other Manual Workers for this routine "off the clock" work, including hours worked in excess of 40 hours in a workweek, in willful violation of the FLSA and New York law.

### NYDS'S FLSA AND NYLL VIOLATIONS WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF THE FLSA AND NYLL

88.     NYDS knows it is subject to the FLSA, including its overtime provisions.

89.      NYDS knows it is subject to the NYLL and its supporting regulations, including the overtime provisions and timely payment of wages provisions.

90.     NYDS knows the NYLL required it to pay manual workers their lawfully earned wages not later than seven calendar days after the end of the week in which such wages are earned.

91.     NYDS knows Rosado and the other Manual Workers regularly spend more than 25% of their shifts performing physical tasks.

92.     In other words, NYDS knows, should have known, or recklessly disregards whether Rosado and the other Manual Workers were "manual workers" entitled to weekly pay under the NYLL.

93.     Nonetheless, NYDS does not pay Rosado and the other Manual Workers their lawfully earned wages within seven calendar days after the end of the week in which they earned such wages.

94.     Instead, NYDS pays Rosado and its other Manual Workers on a bi-weekly basis.

95.     In other words, NYDS knows, should have known, or recklessly disregards whether it failed to timely pay Rosado and the other Manual Workers their lawfully earned wages in violation of the NYLL.

96.     NYDS's failure to timely pay Rosado and the other Manual Workers their lawfully earned wages is neither reasonable, nor is NYDS's decision to pay these manual workers on a bi-weekly basis made in good faith.

97.     Further, NYDS knew Rosado and the other Manual Workers were its non-exempt employees entitled to overtime because NYDS classified and paid them as such.

98.     NYDS knew Rosado and the other Manual Workers are its hourly employees because NYDS pays them by the hour.

99.     NYDS knew Rosado and the other Manual Workers worked more than 40 hours in at least one workweek during the relevant period because NYDS required them to record their "on the clock" hours worked using its timeclock system.

100.    NYDS knew the FLSA and NYLL require it to pay Rosado and the other Manual Workers for all hours they perform compensable work.

101.    NYDS knew the FLSA and NYLL require it to pay Rosado and the other Manual Workers overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek.

102.    NYDS knew it failed to provide Rosado and the other Manual Workers with *bona fide* uninterrupted meal breaks.

103.    NYDS knew Rosado and the other Manual Workers regularly work during their unpaid "meal breaks" because NYDS expects and requires them to.

104.    NYDS knew Rosado and the Manual Workers regularly spend their "meal breaks" substantially performing their normal job duties for NYDS's predominant benefit.

105.    NYDS knew Rosado and the other Manual Workers perform compensable work during their unpaid "meal breaks."

106.    Thus, NYDS knew, should have known, or recklessly disregarded the fact that Rosado and the other Manual Workers do not actually receive *bona fide* uninterrupted meal breaks.

107.    NYDS knew that, as Rosado's and the other Manual Workers' employer, it had a duty to ensure they are not performing work that NYDS does not want performed during their unpaid "meal breaks."

108.    NYDS knew it automatically deducts 30 minutes per shift from Rosado's and the Manual Worker's hours and wages for "meal breaks" regardless of whether they actually receive a *bona fide* uninterrupted meal break.

109.    And NYDS knew Rosado and the other Manual Workers worked more than 40 hours in at least one workweek during the relevant period.

110.    Thus, NYDS knew, should have known, or recklessly disregarded the fact that it did not pay Rosado and the other Manual Workers for all hours, including overtime hours, they perform compensable work, including the compensable work they perform during their unpaid "meal breaks."

111.    In other words, NYDS knew, should have known, or recklessly disregarded the fact that it failed to pay Rosado and the other Manual Workers overtime wages for all overtime hours worked, in willful violation of the FLSA.

112.    NYDS's failure to pay Rosado and the other Manual Workers overtime compensation for all overtime hours worked is neither reasonable, nor is the decision not to pay them overtime compensation for all overtime hours worked made in good faith.

113.    NYDS knows, should have known, or recklessly disregards whether its conduct described in this Complaint violates the FLSA and NYLL.

114.    NYDS knowingly, willfully, and/or with reckless disregard carried out its policies that systematically deprived Rosado and the other Manual Workers of their lawfully earned wages in a timely manner and overtime wages, in willful violation of the FLSA and NYLL.

115.    In sum, NYDS's violations of the FLSA and NYLL are willful, carried out in bad faith, and have caused significant damage to Rosado and the other Manual Workers.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

116.    Rosado brings this action as an FLSA collective action and a class action under FED. R. CIV. P. 23.

117.    Like Rosado, the other Manual Workers are uniformly victimized by NYDS's bi-weekly pay scheme and auto-deduction policy.

118.    Other Manual Workers worked with Rosado and indicated they were paid in the same manner, performed the same or similar physical work, and were subject to NYDS's same bi-weekly pay scheme and auto-deduction policy.

119.    Based on his experience with NYDS, Rosado is aware NYDS's practices were imposed on the other Manual Workers.

120.    Rosado and the other Manual Workers have all been injured in that they have been compensated in an untimely manner and failed to receive all earned wages due to NYDS's common policies, practices, and patterns of conduct.

121.    Indeed, NYDS's company-wide policies and practices affected Rosado and the other Manual Workers similarly.

122.    And NYDS benefited from the same type of unfair and/or wrongful acts as to each Manual Worker.

123.    The putative class of Manual Workers includes more than 100 members.

124.    Thus, the putative class of Manual Workers is so numerous that the joinder of all class members in one lawsuit is impracticable.

125.    The Manual Workers are similarly situated in the most relevant respects.

126.    Even if their precise job titles, exact duties, and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to their lawfully earned wages.

127.    Rather, the Manual Workers are held together by NYDS's bi-weekly pay scheme and auto-deduction policy, which systematically deprive Rosado and the Manual Workers of their lawfully earned wages on a timely basis.

128.    NYDS's records reflect the wages each Hourly Manual Worker earned each workweek.

129.    NYDS's records also reflect it failed to pay its Manual Workers their lawfully earned wages within seven days of the time they completed their work.

130.    And NYDS's records reflect that it automatically deducted 30 minutes from each Manual Workers hours and wages each workday for so called "meal breaks."

131.    The untimely wages and overtime wages owed to Rosado and the other Manual Workers can therefore be calculated using the same formula applied to the same records.

132.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to NYDS's records, and there is no detraction from the common nucleus of liability facts.

133.    Therefore, the issue of damages does not preclude class or collective treatment.

134.    And Rosado's experiences are therefore typical of the experiences of the other Manual Workers.

135.    Rosado has no interest contrary to, or in conflict with, the interests of other Manual Workers that would prevent class or collective treatment.

136.    Like each Manual Worker, Rosado has an interest in obtaining the untimely wages, earned wages, and other damages owed to them under the FLSA and New York law.

137.    Rosado and his counsel will fairly and adequately represent the Manual Workers and their interests.

138.    Indeed, Rosado retained counsel with significant experience in handling complex class and collective action litigation.

139.    A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

140.    Absent this class and collective action, many Manual Workers will not obtain redress for their injuries, and NYDS will reap the unjust benefits of violating the FLSA and New York law.

141.    Further, even if some of the Manual Workers could afford individual litigation against NYDS, it would be unduly burdensome to the judicial system.

142.    Indeed, the multiplicity of actions would create a hardship for the Manual Workers, the Court, and NYDS.

143.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Manual Workers' claims.

144.    The questions of law and fact that are common to each Manual Worker predominate over any questions affecting solely the individual members.

145.    The common questions of law and fact include:

    a.    Whether NYDS paid the Manual Workers their earned wages on a non-weekly basis;

    b.    Whether NYDS paid its Manual Workers their lawfully earned wages on an untimely basis in violation of the NYLL;

    c.    Whether NYDS engaged in a policy and practice of requiring its Manual Workers to clock out for 30 minutes a day for "meal breaks," regardless of whether they actually received a *bona fide* uninterrupted meal break;

    d.    Whether NYDS knew, should have known, or had reason to know, the Manual Workers were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid "meal breaks";

    e.    Whether NYDS failed to pay its Manual Workers overtime for all overtime hours worked, including those worked "off the clock," in violation of the FLSA and NYLL;

f.    Whether NYDS's decision not to pay the Manual Workers their earned wages on a weekly basis was made in good faith;

g.    Whether NYDS's decision not to pay the Manual Workers overtime for all overtime hours worked, including those worked "off the clock," was made in good faith; and

h.    Whether NYDS's violations were willful.

146.    Rosado knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and collective action.

147.    As part of its regular business practices, NYDS intentionally, willfully, and repeatedly violated the FLSA and NYLL with respect to Rosado and the other Manual Workers.

148.    NYDS's bi-weekly pay scheme and auto-deduction policy deprive Rosado and the other Manual Workers of the lawfully earned wages on a timely basis and overtime wages they are owed under the FLSA and New York law.

149.    There are many similarly situated FLSA Collective Members who have been denied overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

150.    The Manual Workers are known to NYDS and can be readily identified through NYDS's business and personnel records.

<u>**COUNT I**</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**
**(FLSA COLLECTIVE MEMBERS)**

151.    Rosado brings his FLSA claims on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

152.    NYDS violated, and is violating, the FLSA by failing to pay Rosado and the other FLSA Collective Members overtime wages of at least 1.5 times their regular rates of pay for all hours

worked in excess of 40 a workweek, including hours worked "off the clock" during their unpaid "meal breaks."

153.    Throughout the relevant period, NYDS has automatically deducted 30 minutes a shift from Rosado's and the other FLSA Collective Members' hours and wages for "meal breaks."

154.    But throughout the relevant period, Rosado and the other FLSA Collective Members did not actually receive *bona fide* uninterrupted meal breaks.

155.    Instead, throughout the relevant period, NYDS expected and required Rosado and the other FLSA Collective Members to remain on duty and perform compensable work during their unpaid "meal breaks."

156.    Rosado and the other FLSA Collective members have been harmed as a direct and proximate result of NYDS's unlawful conduct because they have been deprived of wages owed for work that they performed and from which NYDS derived a direct and substantial benefit.

157.    NYDS knowingly, willfully, and/or in reckless disregard of the FLSA carried out this pattern and practice of failing to pay Rosado and the other FLSA Collective Members overtime compensation at the required premium rate for all overtime hours worked.

158.    NYDS's failure to pay Rosado and the other FLSA Collective Members overtime for all overtime hours worked was neither reasonable, nor was the decision not to pay overtime compensation for all overtime hours worked made in good faith.

159.    Accordingly, Rosado and the other FLSA Collective Members are entitled to recover difference between the overtime wages actually paid and the overtime wages actually earned, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL
### (NEW YORK CLASS MEMBERS)

160.    Rosado brings his NYLL overtime claims as a class action on behalf of himself and the other New York Class Members pursuant to FED. R. CIV. P. 23.

161.    NYDS's conduct violates the NYLL and its implementing regulations, NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2.

162.    At all relevant times, NYDS was subject to the NYLL because NYDS was a covered "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

163.    At all relevant times, NYDS employed Rosado and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

164.    The NYLL requires employers, like NYDS, to pay non-exempt employees, including Rosado and the other New York Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a workweek. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

165.    Rosado and the other New York Class Members are entitled to overtime pay under the NYLL.

166.    NYDS violated, and is violating, the NYLL by employing non-exempt employees (Rosado and the other New York Class Members) for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek, including hours worked "off the clock" during their "meal breaks." *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

167.    NYDS's unlawful conduct harmed Rosado and the other New York Class Members by depriving them of the premium overtime wages they are owed.

168.    NYDS acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

169.    Thus, NYDS's NYLL violations with respect to Rosado and the other New York Class Members were "willful" within the meaning of Section 198 of the NYLL. *See* NYLL § 198.

170.    Accordingly, NYDS owes Rosado and the other New York Class Members the difference between the overtime wages actually paid and the overtime wages actually earned, plus interest on those amount, penalties, and attorneys' fees and costs. *See* NYLL §§ 198(4) and 663(1).

<u>COUNT III</u>

**FAILURE TO PAY TIMELY WAGES UNDER THE NYLL**
**(NEW YORK CLASS MEMBERS)**

171.    Rosado brings his NYLL claims as a class action on behalf of himself and similarly situated New York Class Members pursuant to FED. R. CIV. P. 23.

172.    Section 191 of the NYLL requires employers, like NYDS, to pay manual workers, including Rosado and the other New York Class Members, their lawfully earned wages weekly and not later than seven calendar days after the end of the week in which such wages are earned. *See* NYLL § 191(1)(a).

173.    NYLL § 191's timely payment of wages provisions and its supporting regulations apply to NYDS and protect Rosado and the other New York Class Members.

174.    NYDS violated, and is violating, the NYLL by failing to pay Rosado and the other New York Class Members on a timely basis. *See* NYLL § 191(1)(a).

175.    NYDS's unlawful conduct harmed Rosado and the other New York Class Members by depriving them of the earned wages they are owed.

176.    In violating the NYLL, NYDS acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

177.    Thus, NYDS's NYLL violations with respect to Rosado and the other New York Class Members were "willful" within the meaning of NYLL § 198.

178.    In *Caul v. Petco Animal Supplies, Inc*, Judge Kovner of the Eastern District of New York held the NYLL's liquidated damages provisions are "designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed." No. 20-CV-3534 (RPK)(SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021), *motion to certify appeal denied*, No. 20-CV-3534 (RPK)(SJB), 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) (citing *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).

179.    Accordingly, Rosado and the other New York Class Members are entitled to recover the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## JURY DEMAND

180.    Rosado demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Rosado, individually and on behalf of the other Manual Workers, seeks the following relief:

      a.    An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

      b.    An Order certifying a class action pursuant to FED. R. CIV. P. 23;

      c.    An Order appointing Rosado as his counsel to represent the interests of the Manual Workers;

      d.    An Order finding NYDS liable to Rosado and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.   An Order finding NYDS liable to Rosado and the other New York Class Members for their unpaid overtime wages owed under the NYLL plus liquidated damages in an amount equal to their unpaid wages;

f.   An Order finding NYDS liable to Rosado and the other New York Class Members for liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

g.   Judgement awarding Rosado and the other Manual Workers all unpaid and untimely wages, unpaid overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or NYLL;

h.   An Order awarding attorneys' fees, costs, and expenses incurred in this action;

i.   Pre- and post-judgment interest at the highest applicable rates; and

j.   Such other and further relief as may be necessary and appropriate.

Dated: August 14, 2024

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
        Brent E. Pelton
111 Broadway, Suite 1503
New York, New York 10006
Phone: (212) 385-9700

Michael A. Josephson*
Andrew W. Dunlap*
Richard M. Schreiber*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: 713-352-1100
Fax: 713-352-3300

mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713-877-8788
Fax: 713-877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR ROSADO AND
THE MANUAL WORKERS**

# EXHIBIT 1

**CONFIDENTIAL FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: _Cristian Rosado_____

1. I hereby consent to make a claim against _NY Dialysis Services Inc._____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at ANDERSON ALEXANDER, PLLC, JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at ANDERSON ALEXANDER, PLLC, JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _NY Dialysis Services Inc.___ - _____.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Cristian Rosado_____
Cristian Rosado (Jun 11, 2023 17:52 EDT)

Date Signed: _Jun 11, 2023_____